## WILMINGTON TRUST CO. v. MUTUAL LIFE INS. CO. OF NEW YORK.

### No. 499.

District Court, D. Delaware.

Sept. 27, 1946.

E. Ennalls Berl, William S. Potter, and Vincent A. Theisen (of Southerland, Berl & Potter), of Wilmington, Del., and Donovan, Leisure, Newton & Lumbard, of New York City, for plaintiff.

James R. Morford (of Marvel & Morford), of Wilmington, Del., and Charles I. Thompson, of Philadelphia, Pa., for defendant.

LEAHY, District Judge.

This is a suit by plaintiff as executor for recovery under two life insurance policies.

On June 26, 1935, defendant issued two endowment policies for $100,000 to Richard C. duPont. On September 11, 1943, the insured was killed as a result of riding as an observer in the testing of an army experimental transport glider.

■ Each policy contained a limiting endorsement in the form of an aviation rider which provided: "Death as a result of operating or riding in any kind of aircraft * * * is a risk not assumed under this Policy and if the Insured shall die as a result, directly or indirectly, of such operating or riding in an aircraft the amount payable shall be limited to the reserve held at the date of death for the face amount of this Policy and for any dividend additions." Defendant has tendered plaintiff $48,517.84, the total premiums paid with compound interest at 3%. The single question, arising on cross-motions for summary judgment, is whether defendant may in Delaware limit its policies of insurance to exclude liability to pay the face of the policies under the circumstances found in the case at bar. The policies were delivered and the premiums paid in Delaware. These contracts are therefore governed by Delaware law.

Under the Delaware law, Rev.Code of Delaware 1935, paragraph 496, Sec. 35, an incontestable clause is a required standard provision which must be in all policies issuing in Delaware. The statute provides: "A provision that * * * the policy * * * shall be incontestable after it has been in force during the lifetime of the insured for a period of not more than two years from its date, except for non-payment of premiums and except for violations of the conditions of the policy relating to naval or military service in time of war and, at the option of the company, provisions relative to benefits in the event of total and permanent disability and provisions which grant additional insurance specifically against death by accident may also be excepted." The policies in suit contained the required incontestable clause. In Sec. 12 of each policy it is provided: "Except for non-payment of premiums, this Policy shall be incontestable after one year from its date of issue unless the Insured dies in such year, in which event it shall be incontestable after two years from its date of issue."

From defendant's point of view the aviation rider attempts to define what risks it will not assume under the policy. The question is whether the Delaware statute and the incontestable clause in the policies bar defendant's right to rely on the aviation rider.

Plaintiff states its contention in this fashion: That the aviation exception in the policies in suit was operative only during the first policy year, during which period the policies remained contestable, i. e., plaintiff's position is that the policies were delivered in Delaware and since the Delaware statute provides for incontestability after a stated period, subject to four exceptions specified in the statute, the rule of expressio unius precludes the insurer from relying upon a further exception not authorized by the statute.

The excellent briefs filed by the parties show the great contrariety of judicial discussion which has occurred on or about statutory [1] and non-statutory incontestabili-

[1] (a) The jurisdictions which have no incontestable statutes are: Arkansas, Connecticut, Florida, Georgia, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nevada, Rhode Island, South Carolina, Vermont, West Virginia and Wisconsin.

(b) The jurisdictions which have incontestable statutes in which aviation risks are not specifically excepted are: Alabama, Arizona, California, Delaware, Idaho, Indiana, Iowa, Maine, Maryland, Massachusetts, New Hampshire, North Carolina, North Dakota, Pennsylvania, Tennessee, Texas, Virginia, Washington and Wyoming.

(c) The jurisdictions having incontestable statutes under which aviation risks are specifically excepted are: Colorado, District of Columbia, Illinois, Kansas, Ohio, Oklahoma, Oregon, Michigan, Minnesota, Nebraska, New Jersey, New Mexico, New York, South Dakota and Utah.

Plaintiff argues that under the statutes found in group (c), supra (1935) Colo. Stat.Ann. c. 87, Sec. 57; 11 Jones Ill. Stat.Ann.1944, Cum.Supp. 66.899, Sec. 224(1) (c); Ill.Rev.Stat.1945, c. 73, § 836(1) (c), 1943 Supp.Gen.Stat.Kansas 1935, 40-420(2); 17 Mich.Stat.Ann.1943, c. 242, § 24.263(3) (4), Comp.Laws

ty provisions[2].

 Jurisdiction is based upon diversity and Delaware law accordingly controls. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. Absent any direct or indirect Delaware authority, it is necessary to consider what a Delaware court probably

---

Supp.Mich. § 12427; Minn.St.1945 and M.S.A. §§ 61.27, 61.30(3); 3 Rev.Stat. of Neb.1943, § 44-502(5); 1 N.J.Rev. Stat.1937, Title 17, Art. 5, 17:34–15, subd. c, N.J.S.A.; 5 N.Mex.Stat.Ann. 1941, § 60-601(3); 27 McKinney's Consol.Laws N.Y.Ann. c. 28, Insurance Law, § 155; 6 Page's Ohio Gen.Code, § 9412, 1945 Supp. § 9420(3), pp. 81, 82; 36 Okl.Stat.1941, § 218(3); 7 Oregon Comp.Laws, Ann. § 101-506(c); 1 S. Dak.Code 1939, Title 31, § 31.1601(4), 31.1609(3); 3 Utah Code Ann.1943, § 43—3—24(3); Dist. of Columbia Code 1940, Title 35, § 35—703 (5:220b), 35—704 (5:220c), these states considered it advisable, although they had existing incontestability statutes, to permit insurance companies to restrict their coverage in the case of aviation situations by providing a specific exception to incontestability in the statute. From this, it is argued, that those jurisdictions appearing in group (b), supra, Rev.Code of Del.1935, par. 496, c. 20, § 35; Ariz. Code Ann.1939, 61-705, subd. 3; 2 Idaho Code 1932, 40-1303, subd. 2; 8 Burns' Indiana Stat.Ann.1933, 1945 Supp. 39-4206(3); Code of Iowa 1939, Title XX, 8684.05, subd. 1; 1 Rev.Stat. of Maine 1944, c. 56, § 140; 5 Ann.Laws of Mass. 175, § 132(2); Rev.Laws of New Hampshire 1942, c. 327, § 10; 2 North Dakota Rev.Code 1943, Title 26, 26-0326; Purdon's Pennsylvania Stat., Title 40, § 510(c); 14 Vernon's Texas Civ.Stat. Title 78, art. 4732, subd. 3; 4 Williams Tenn. Code Ann.1934, c. 6, § 6179(3); Virginia Code Ann.1942, Title 38, c. 169, § 4251c (3); 8 Remington's Rev.Stat. of Washington Ann. § 7230(2); Wyoming Rev. Stat.1931, § 57-232(3), show a legislative intent not to permit insurance companies to restrict their coverage by attaching aviation riders to their policies.

[2] The briefs of the parties contain much citation of authority on the analogy of decisions with "suicide riders". Defendant cites 29 cases, which it contends sustain the non-assumption of risk of suicide over the incontestable clause. They are: Mutual Life Ins. Co. v. Kelly, 8 Cir., 114 F. 268; Hearin v. Standard Life Ins. Co., D.C.E.D.Ark., 8 F.2d 202; Mack v. Connecticut Gen. Life Ins. Co., 8 Cir., 12 F.2d 416; Wright v. Philadelphia Life Ins. Co., D.C., E.D.S.C., 25 F.2d 514; Ferrand v. New York Life Ins. Co., 8 Cir., 69 F.2d 159; Equitable Life Assur. Soc. of United States v. Deem, 4 Cir., 91 F.2d 569, 571, 572; New England Mutual Life Ins. Co. v. Mitchell, 4 Cir., 118 F.2d 414; Howe v. New York Life Ins. Co., D.C.Cal., 2 F. Supp. 242; New England Mut. Life Ins. Co. v. Weyenberg, D.C., E.D.Wis., 29 F. Supp. 177; Monahan v. New York Life Ins. Co., D.C.W.D.Okl., 26 F.Supp. 859; Moore v. Bankers' Credit Life Ins. Co., 223 Ala. 373, 136 So. 798; North American Union v. Trenner, 138 Ill.App. 586; Williamson v. American Ins. Union, 284 Ill.App. 150, 1 N.E.2d 541; Court of Honor v. Hutchens, Ind.App., 79 N.E. 409; Johnson v. Federal Life Ins. Co., 224 Iowa 797, 276 N.W. 595; Myers v. Liberty Life Ins. Co., 124 Kan. 191, 257 P. 933, 55 A.L.R. 542; Vance v. Life & Casualty Ins. Co., 184 Miss. 604, 186 So. 647; Stean v. Occidental Life Ins. Co., 24 N.M. 346, 171 P. 786; Woodbery v. New York Life Ins. Co., 129 Misc. 365, 221 N.Y.S. 357; Wechsler v. New York Life Ins. Co., 147 Misc. 8, 262 N.Y.S. 196; Bankers Life Co. of Des Moines, Iowa, v. Horton, 189 Okl. 591, 118 P.2d 402; Hall v. Mutual Reserve Fund Life Ass'n, 19 Pa.Super. 31; Perilstein v. Prudential Ins. Co. of America, 345 Pa. 604, 29 A.2d 487; Childress v. Fraternal Union of America, 113 Tenn. 252, 82 S.W.2d 832; Scales v. Jefferson Standard Life Ins. Co., 155 Tenn. 412, 295 S W. 58, 55 A. L.R. 537; Carothers v. Atlanta Life Ins. Co., 178 Tenn. 485, 159 S.W.2d 830; Howard et al. v. Missouri State Life Ins. Co., Tex.Civ.App., 289 S.W. 114; Southwestern Life Ins. Co. v. Houston, Tex. Civ.App., 121 S.W.2d 619; New York Life Ins. Co. v. Newport, 1 Wash.2d 511, 96 P.2d 449.

In this same connection, plaintiff relies on contra cases which hold that after the contestable period has run, the incontestable clause prevents a defense of denial of suicide coverage. These cases are: Philadelphia Life Ins. Co. v. Burgess, D.C.E.D.S.C., 18 F.2d 599; Standard Life Ins. Co. v. Robbs, 177 Ark. 275, 6 S.W.2d 520; Fore v. New York Life Ins. Co., 180 Ark. 536, 22 S.W.2d 401, 67 A.L.R. 1358; Royal Circle v. Achterrath, 204 Ill. 549, 68 N.E. 492, 63 L.R.A. 452, 98 Am.St.Rep. 224; Mutual Protective League v. McKee, 122 Ill.App. 376, affirmed on other grounds 223 Ill. 364, 79 N.E. 25; Seymour v. Mutual Protective League, 155 Ill.App. 21; Goodwin v. Provident Sav. Life Assur.

would decide in the light of the available facts.[3] Stentor Electric Mfg. Co. v. Klaxon Co., 3 Cir., 125 F.2d 820. First, it becomes necessary, therefore, to examine the matter of principle underlying the problem presented by the instant case.

■ That a policy is incontestable means that its *validity* can not be questioned, usually after a certain period of time as fixed by statute or by a provision in the policy of insurance itself. Incontestability has nothing whatever to do with the extent or limits of coverage agreed to between the parties to the insurance contract. Every court, our analysis discloses, has so interpreted incontestability where the *matter was directly in issue*. See, Head v. New York Life Ins. Co. (Head v. Hartford Accident Indemnity Co.), 10 Cir., 43 F.2d 517, 520; Metropolitan Life Ins. Co. v. Conway, 252 N.Y. 449, 169 N.E. 642; Woodbery v. New York Life Ins. Co., 129 Misc. 365, 221 N.Y. S. 357; Flannagan v. Provident Life & Accident Ins. Co., 4 Cir., 22 F.2d 136; Mack v. Connecticut General Life Ins. Co. of Hartford, 8 Cir., 12 F.2d 416; Field v. Western Indemnity Co., Tex.Civ.App., 227 S.W. 530; Murphy v. Travelers' Ins. Co., 134 Misc. 238, 234 N.Y.S. 278. The doctrine of these cases is that the legislative policy behind incontestability clauses is to eliminate the right to question the validity of the policy after the lapse of time, except in the specific situations excepted in the statutes pertaining to incontestability. It is a non-sequitur to say that because validity after the passage of time can only be questioned within certain statutory exceptions that the insurance company must and can not, in the first instance, contract relative to its limit of coverage. What the Legislature has said is that no matter what risk you assume, your Insurance Company can only question validity, after the passage of time, in certain respects; it has not said and it does not follow that you must issue a policy, if it is to be issued at all, covering every conceivable risk, except those mentioned in statutes governing incontestability. The two situations are wholly separate and distinct.

■ The business of writing insurance is generally said to be "affected with the public interest". Hence, it is probable that a Legislature could constitutionally require as a condition of doing business in a particular state that all matters excepted should go to both *validity* and *coverage*. But, it would appear such a legislative intention should be expressed in unmistakably clear language, for the result would be a legal anomaly; i. e., during the first year of the policy, the Insurance Company would be liable for risks A and B, and, after the expiration of the two-year period, for example, such a company would be liable for risks A and B and, also, C, D, and E to infinity.

The leading case upon the question whether an aviation rider is consistent with an incontestable statute is Metropolitan Life Ins. Co. v. Conway, 252 N.Y. 449, 169 N.E. 642. The statute there involved was substantially similar, if not almost identical, to the Delaware statute. This case is authority for the conclusions already stated.

Soc., 97 Iowa 226, 66 N.W. 157, 32 L. R.A. 473, 59 Am.St.Rep. 411; Supreme Court of Honor v. Updegraff, 68 Kan. 474, 75 P. 477, 1 Ann.Cas. 309; Mareck v. Mutual Reserve Fund Life Ass'n, 62 Minn. 39, 64 N.W. 68, 54 Am.St.Rep. 613; Yates v. New England Mut. Life Ins. Co., 117 Neb. 265, 220 N.W. 285; Simpson v. Life Ins. Co., 115 N.C. 393, 20 S.E. 517; Mutual Reserve Fund Life Ass'n v. Payne, Tex.Civ.App., 32 S.W. 1063.

Defendant counters by arguing that eight of the cases listed have been overruled in their own jurisdictions. In turn, plaintiff points out that many of the suicide cases do not stand for the proposition urged by defendant. As stated, while the arguments of both parties with respect to analogous situations have been helpful, it has been concluded to limit discussion to the precise point for decision, i. e., *can an insurance company sell a policy in Delaware which contains an aviation rider?*

[3] Judge Charles E. Clark in 55 Yale L. J. 267, 290 (State Law in the Federal Courts: The Brooding Omnipresence of Erie R. C. v. Tompkins) says: " * * * the current view, rippling down through the lower federal courts from Supreme Court precedents which perhaps were not intended to go quite so far, is that we must act as a hollow sounding board, wooden indeed, for any state judge who cares to express himself."

Mr. Justice Cardozo, then Judge, wrote the opinion for a unanimous court. He said: "The provision that a policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years is not a mandate as to coverage, a definition of the hazards to be borne by the insurer. It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition. * * *

"The meaning of the statute in that regard is not changed by its exceptions. A contest is prohibited in respect of the validity of a policy, 'except for non-payment of premiums and except for violation of the conditions of the policy relating to military or naval service in time of war' (Sec. 101, subd. 2). Here again we must distinguish between a denial of coverage and a defense of invalidity. Provisions are not unusual that an insured entering the military or naval service shall forfeit his insurance. A condition of that order is more than a limitation of the risk. In the event of violation, the policy, at the election of the insurer, is avoided altogether, and this though the death is unrelated to the breach. No such result follows where there is a mere restriction as to coverage. The policy is still valid in respect of risks assumed."[4]

In Pacific Mutual Life Insurance Co. of California v. Fishback, 171 Wash. 244, 17 P.2d 841, 842, the court said of the aviation rider: "It is merely a part of the definition or description of the risk or hazard assumed by the insurance company. The language is, with reference to death occurring under any of the specified conditions, 'is a risk not assumed under this policy.' It seems plain to us that a risk 'not assumed' by such express language is a matter not at all inconsistent with the required statutory incontestable provision, and that the resisting by an insurance company of a claim for loss which by such express terms of the policy is 'not assumed' by the insurance company is not a contesting of the policy within the meaning of the statutory incontestable clause required to be embodied therein."

Validity, in short, has nothing whatever to do with the risk and does not dictate the quantum of risk which a company must assume by agreement with the insured.

Plaintiff urges us to follow a contra doctrine to the Conway case, found in, at least, three comparatively recent decisions. These are: United States v. Patryas, 303 U.S. 341, 58 S.Ct. 551, 82 L.Ed. 883; Bernier v. Pacific Mutual Life Ins. Co. of California, 173 La. 1078, 139 So. 629, 88 A.L.R. 765; State ex rel. Republic Nat. Life Ins. Co. v. Smrha, 138 Neb. 484, 293 N.W. 372.

United States v. Patryas is of little assistance because there the court was considering a coverage which had been as-

---

[4] Whatever criticism may be made of Judge Cardozo's ratio as urged in one of the cases cited by plaintiff, the former has the legal imprimatur of Professor Williston—a no mean endorsement. Williston is of the same view as Cardozo, J., in that exceptions as to suicide and death caused by engaging in aviation are matters which do not go to the validity of the policy, but are items which fix the limits of coverage. He (Contracts, Rev.Ed. p. 2280) writes:

"In determining whether the incontestable clause is applicable to a given situation a distinction should be noted between matters of defense going to invalidity of the whole policy on the one hand, and on the other hand provisions relating to excepted risks. The incontestable clause is intended not to enlarge the scope of the insurer's promise so as to include liability for death due to causes which are excluded either by express terms of the policy or by implication of law, but to make certain the enforceability of the promise as set out in the policy. Properly interpreted, therefore, the incontestable clause does not exclude a defense based on a suicide clause. Such a defense does not contest the validity of the policy, as does a defense of fraud in procuring the policy; it supports the policy, but asserts that by its terms the insurer is not bound to pay where death is caused by suicide. The contrary decisions which regard the two provisions as conflicting, and which, on the principle of interpreting against the insurer, held that the incontestable clause prevails over the other, fail to observe this distinction. *The same reasoning is applicable to a provision excluding from the risk assumed by the insurer, death caused by engaging in aviation or in a forbidden occupation, or due to the insured's engaging in crime.*" (Emphasis added.)

sumed by the defendant insurance company. This is quite a different matter from a coverage which has been expressly excluded. In the Patryas case, the government was held to be contesting the policy of insurance because it was defending against a risk assumed by the terms of the contract, as the court construed the contract. Here, defendant is not contesting the policies. On the contrary, it is urging that the policies should be enforced according to the terms upon which the parties expressly agreed.

The Bernier v. Pacific Mut. Life Ins. Co. case is likewise irrelevant, for there is no incontestability statute in Louisiana. The court was not construing a statute and did not have before it the question which arose in the Conway case, and arises in this case, whether an incontestability statute overrides an aviation exclusion clause. The court was merely construing clauses of a contract written by the insurer.

The Smrha case is distinguishable in that a provision of the Nebraska statute prohibited the issuance of any policy containing a provision by which the settlement at maturity after the expiration of the contestable period "* * * shall be of less value than the amount promised on the face of the policy" less indebtedness and less unpaid premiums. Comp.St.1929, § 44-603. There is no such provision in the Delaware law. The Nebraska court refused to compel the directors of an insurance department to approve a typical aviation rider, limiting the company's liability under the policy if death resulted from riding in or operating an aircraft. It is apparent that the Nebraska court based its decision upon the combined effect of the local statute requiring settlement at face value at maturity and the incontestability statute. But, if Nebraska would have reached the same result ex its peculiar provision, we nevertheless think that the case is wrong in principle.

It is believed that Delaware would follow Metropolitan Life Ins. Co. v. Conway because it is correct in its reasoning. There is no indication in any Delaware case that Delaware's view is at war with the general principles on which the Conway result is based. There is no suggestion in analogous Delaware jurisprudence that its courts would favor what is believed to be a legal anomaly.

■ Moreover, in view of the doctrine of Chicago Corporation v. Munds, 20 Del. Ch. 142, 172 A. 452, and the absence of pertinent court decisions in the State of Delaware, it must be assumed that the Legislature intended, when it adopted the Delaware statute, that it be given the same judicial construction which the same phraseology had already received in other states. Prior to the adoption of the 1931 Standard Required Provision for the incontestable statute the same, or substantially the same, Act had been adopted by the Legislatures of other states, and this section of their law had been judicially construed in 8 cases involving New York, Illinois, Virginia, Oklahoma and Texas statutes. In all of these cases the incontestable provision was held consistent with limitations upon coverage. See, Head v. New York Life Ins. Co. (Head v. Hartford Accident & Indemnity Co.), 10 Cir., 43 F.2d 517, 520; Metropolitan Life Ins. Co. v. Conway, 252 N.Y. 449, 169 N.E. 642; Woodbery v. New York Life Ins. Co., 129 Misc. 365, 221 N.Y.S. 357; Flannagan v. Provident Life & Accident Ins. Co., 4 Cir., 22 F.2d 136; Mack v. Connecticut General Life Ins. Co. of Hartford, 8 Cir., 12 F.2d 416; Field v. Western Indemnity Co., Tex. Civ.App., 227 S.W. 530; Murphy v. Travelers' Ins. Co., 134 Misc. 238, 234 N.Y.S. 278. Moreover, under another statutory provision, Rev.Code of Delaware 1935, par. 499, c. 20, Sec. 38, it is provided that no policy of life insurance shall be executed or delivered in Delaware, until the form of the same has been filed with the insurance commissioner; and the insurance commissioner has the duty to point out wherein the form of such policy does not comply with the Delaware insurance laws. It is tacitly conceded that defendant did not violate this particular statute, i.e., there is nothing in the record to show that the insurance commissioner considered the aviation rider as not conforming to the Delaware incontestability statute. This is significant, for it is difficult to conclude

that the Delaware Legislature should be presumed to have intended that the statute should have a meaning at war with the apparent interpretation of the state official charged with the administration of the insurance laws. Cf. United States v. Johnson, D.C.Del., 53 F.Supp. 596, 598, affirmed 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236. This is based on the well settled rule of law that the construction placed upon a statute by those who are charged with the responsibility of administering it, is presumably correct and will not be judicially otherwise construed, except for strong and compelling reasons. United States v. Citizens Loan & Trust Co., 316 U.S. 209, 62 S.Ct. 1026, 86 L.Ed. 1387; United States v. Moore, 95 U.S. 760, 24 L.Ed. 588; Robertson v. Downing, 127 U.S. 607, 8 S. Ct. 1328, 32 L.Ed. 269; United States v. Jackson, 280 U.S. 183, 193, 50 S.Ct. 143, 74 L.Ed. 361; United States v. Madigan, 300 U.S. 500, 57 S.Ct. 566, 81 L.Ed. 767; New York, Chicago & St. Louis Railroad Co. v. Frank, 314 U.S. 360, 62 S.Ct. 258, 86 L.Ed. 277; Dismuke v. United States, 297 U.S. 167, 56 S.Ct. 400, 80 L.Ed. 561; United States v. Chicago, N. S. & M. R. Co., 288 U.S. 1, 53 S.Ct. 245, 77 L.Ed. 583; United States v. American Trucking Assn's, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345. This rule does not bind the Court nor force it to uphold the construction of the administrative official if that construction is obviously wrong. But here there is no strong or compelling reason to construe the Delaware statute other than we have.

Finally, plaintiff argues in its reply brief that the aviation rider appearing in the policy in suit refers to civilian flying only and points out that there is no provision in the policy for war service. This is an issue which is not created by the pleadings. Without passing on the point,[5] in any degree, if plaintiff wishes to amend its complaint and charge that the aviation clause, which we have been discussing, is restricted to non-military flying and the insured in the case at bar did not meet his death in a non-military flight, then summary judgment for defendant will be withheld for a period of ten days; otherwise, an order will be entered denying plaintiff's motion for summary judgment and granting defendant's motion.

---

[5] To date only one court has met this question and it decided against plaintiff's contention. See Thoma v. New York Life Ins. Co., Pa.Com.Pl., 30 North.Co.R. 369.